UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK x
---------------------------------------------
MARCO DRUSKOVICH,                                          :

                v.                           :   Index No. 25-572
MATHEW ANDREWS,
RUSHMI BHASKARAN, and OTHER
AS-YET-UNKNOWN SUPERVISORS,
JOHN and JANE DOES # 1-5,
Individually, and as Assistant United States
Attorneys in The Southern District            :
of NEW YORK,
THE CITY OF NEW YORK,                         :
JEREMY R. VEIT, LESLIE GAUVIN,
HECTOR RODRIGUEZ, RYAN BOYLAN,                :
WALTER MIKOWSKI and OTHER
AS-YET-UNKNOWN SUPERVISORS
& POLICE OFFICERS, JOHN DOES # 6-10,
Individually, and as Members of the New York
City Police Department or Employees
Of the U.S. Department of Justice.

 :

                                   :
             Defendants.
--------------------------------------------------------------x


---

# COMPLAINT

---


Thomas Eddy
Attorney for Plaintiff
Marco Druskovich
300 Pelham Rd   Suite 8R
New Rochelle, New York 10805
(917)-710-1098
Email:thomaseddyjd@gmail.com

## TABLE OF CONTENTS

NATURE OF ACTION ........................................................... …………1

JURISDICTION, VENUE, and CONDITIONS PRECEDENT ........................................
…………2

JURY DEMAND…………………………………………………………………….3

THE PARTIES……………………………………………………………………………3

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION…………………………………5

    **A.** Plaintiff Was Seized And Searched In The Absence of Probable Cause……………………5

    **B.** NYPD Detective Jeremy R. Veit Declined To Execute A Draft Complaint Which Alleged Facts Sufficient To Establish Probable Cause To Arrest For A Narcotics
Offense…………………………………………………………………………6

    **C.** AUSA Bhaskaran Filed A Complaint That Failed To Aver Probable Cause To Arrest For Any Federal Offense…..…………………………………………………...7

    **D.** Aware That AUSA Bhaskaran Was UnableTo Unearth Facts Sufficient To Establish Probable Cause, AUSA Andrews Conspired To Manufacture Those Facts………………9

DAMAGES……………………………………………………………………………………1
1

FIRST CAUSE OF ACTION   42 U.S.C. § 1983. Unlawful Seizure/False Arrest in violation of Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) as well as the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. All Individual Defendants………..12

SECOND CAUSE OF ACTION.  42 U.S.C. § 1983. Malicious prosecution in violation of Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) as well as the Fourth, Fifth, and Fourteenth Amendments. All Individual Defendants…………………………………..14

THIRD CAUSE OF ACTION.  42 U.S.C. § 1983. Evidence fabrication in violation of Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) as well as the Fourth, Fifth, Sixth, and Fourteenth Amendments. All Individual Defendants……………………...15

FOURTH CAUSE OF ACTION  42 U.S.C. § 1983 and N.Y.C. Admin. Code §§ 8-802–8-803.

Failure to intervene. All Individual
Defendants…………………………………………………..15

FIFTH CAUSE OF ACTION. 42 U.S.C. § 1983 Monell municipal liability for conduct of police
officers relating to withholding exculpatory evidence, fabrication of evidence, and
initiating the prosecution without probable cause — Defendant City of New York………………16

iii

## NATURE OF ACTION

1.     This is a civil action, pursuant to 42 U.S.C. §1983, § 1988, and <u>Bivens v. Six Unknown</u>

<u>Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), seeking monetary damages for Plaintiff, MARCO

DRUSKOVICH, due to his seizure search and arrest in the absence of probable cause by officers of

the New York City Police Department ("NYPD") and subsequent malicious prosecution in the

Southern District of New York by NYPD officers and Assistant United States Attorneys.

2.     On November 14, 2022, the United States Attorney's Office for the Southern District of New

York (the "Government") informed United States District Judge John P. Cronan that, in the

course of preparing for a suppression hearing in its prosecution of Plaintiff, it learned that the

anticipated testimony of NYPD officers regarding the circumstances of Plaintiff's arrest had

deviated from that sworn to, or otherwise set forth, by the Government in prior Court filings.

3.     On November 16, 2022, having determined, in the interests of justice, that it could no longer

rely on the narcotics arresting officers claimed to have recovered from Plaintiff on the date of

his arrest and that it therefor could not prove its charges, the Government filed a *nolle*

*prosequi* seeking dismissal of Indictment 22 Cr. 309 (JPC), in which Plaintiff was charged

with one count of conspiracy to distribute narcotics, in violation of Title 21, United States

Code ("USC"), Sections 846, 841(b)(1)(B), and 841(b)(1)(C), and one count of possessing

narcotics with intent to distribute, in violation of Title 21, USC, Section 841(b)(1)(C).

4.     On November 17, 2022, the Court ordered that the indictment be dismissed.

5.     This lawsuit also seeks to hold the defendant CITY OF NEW YORK liable for the above

misconduct under the federal civil rights statute, 42 U.S.C. § 1983, and *Monell v. Dept. Of*

*Social* Services, 436 U.S. 658 (1978). The unlawful actions of police detectives documented in this lawsuit resulted from affirmative or *de facto* municipal policies, practices and customs permitting

1

violations of the constitutional rights of criminal suspects and defendants, or from deliberate indifference by policy-making officials, acting on behalf of the City of New York, to such violations. As Plaintiff will demonstrate, the NYPD has, as a matter of policy, given false or unreliable testimony and lied to or misled courts, prosecutors, defense attorneys, and criminal defendants in order to cover up their unlawful behavior. In the rare case where such misconduct has been exposed, these agencies took no disciplinary action against the offending employees, but instead praised and promoted them, thereby encouraging future constitutional violations to occur, including those directed against Plaintiff.

6.      This lawsuit also seeks to holds the individual Assistant United States Attorneys responsible pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,</u> 403 U.S. 388 (1971) for failing to intervene to prevent the false arrest, initiating a prosecution with the knowledge that arresting officers lacked probable cause to arrest Plaintiff and fabricating evidence in an effort to prevent the suppression of critical unlawfully seized evidence and the dismissal of the prosecution.


## **<u>JURISDICTION, VENUE, and CONDITIONS PRECEDENT</u>**

7.      This action arises under 42 U.S.C. §§ 1983 and 1988, <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,</u> 403 U.S. 388 (1971) to redress the deprivation under the color of law of

Plaintiff's rights as secured by the United States Constitution.

8.      The acts and omissions giving rise to this complaint occurred in Bronx and New York Counties.

9.     Plaintiff brings this action for compensatory and punitive damages, affirmative and equitable

relief, an award of costs and attorney's fees, and such other and further relief as this Court

deems equitable and just. Plaintiff's damages exceed $25,000.

2

10.    Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343 and 1367, as well as by

principles of pendent jurisdiction.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this is the district in

which the claim arose.

12.    The action has been commenced within the applicable limitations period for each claim.

13.    On or about January 6, 2023, pursuant to New York General Municipal Law § 50-e, Plaintiff

timely served notice of the present claims upon Defendant City of New York.

14.    A hearing pursuant to New York General Municipal Law§ 50-h was held on April 19, 2023.

15.    Plaintiff has duly complied with all of the conditions precedent to the commencement of this

action.

3
## JURY DEMAND

16.      Pursuant to the Seventh Amendment of the United States Constitution and Fed. R. Civ. P.

38(b), Plaintiff respectfully demands a trial by jury on all claims set forth in this Complaint


## THE PARTIES

17.     Plaintiff, MARCO DRUSKOVICH is a citizen and resident of the State of New Jersey and

of the United States.

18.     At all relevant times, Defendant MATHEW ANDREWS was employed by the United

        States Department of Justice as an Assistant United States Attorney in the Southern District

        of New

York.

19.     At all relevant times, Defendant RUSHMI BHASKARAN was employed by the United

        States Department of Justice as an Assistant United States Attorney in the Southern District

        of New York.

20.     Defendant, CITY OF NEW YORK, is a municipal corporation of the State of New York

        and, as such, is a resident of the Southern District of New York.

21.     Defendant, JEREMY R. VEIT, was at all relevant times a detective employed by the New

        York City Police Department ["NYPD"], acting toward Plaintiff within the scope of his

        employment under color of the statutes, ordinances, customs, and usage of the State of

        New York and the City of New York.  He is sued in his individual and his official

        capacities.

22.     Defendant LESLIE GAUVIN was at all relevant times a detective employed by the NYPD,

        acting toward Plaintiff within the scope of his employment under color of the statutes,

        ordinances, customs, and usage of the State of New York and the City of New

4

York. He is sued in his individual and his official capacities.

23.     Defendant HECTOR RODRIGUEZ was at all relevant times a detective employed by the NYPD, acting toward Plaintiff within the scope of his employment under color of the statutes, ordinances, customs, and usage of the State of New York and the City of New York. He is sued in his individual and his official capacities.

24.     Defendant WALTER MIKOWSKI was at all relevant times a detective employed by the NYPD, acting toward Plaintiff within the scope of his employment under color of the statutes, ordinances, customs, and usage of the State of New York and the City of New York. He is sued in his individual and his official capacities.

25.     Defendant RYAN BOYLAN was at all relevant times a Sergeant employed by the NYPD, acting toward Plaintiff within the scope of his employment under color of the statutes, ordinances, customs, and usage of the State of New York and the City of New York. He is sued in his individual and his official capacities.

26.     Defendants Does #2 through 10, whose identities and roles Plaintiff has yet to ascertain notwithstanding reasonable efforts to do so, are sued herein by the fictitious designations "John Doe" and "Jane Doe," represent those officers, detectives, supervisors, and/or other agents and employees of the City of New York and the Department of Justice acting under color of law and within the scope of their employment in carrying out investigative and other law enforcement functions, who participated in the misconduct described herein. They are sued in their individual and official capacities.

<u>ALLEGATIONS COMMON TO ALL CAUSES OF ACTION</u>

A.     <u>Plaintiff Was Seized And Searched In The Absence of Probable Cause</u>

27.     Early on the morning of February 1, 2022, Defendant Leslie Gauvin led a joint federal-state

Organized Crime Drug Enforcement Task Force comprised of agents of the Drug Enforcement

Administration, the New York State Police and the NYPD.

28.     Officers and agents assembled outside 890 Elsmere Place in the Bronx to execute warrants

to arrest Carlos Laureano on murder, firearm, and narcotics-related charges and to search

Apt 3C, where Laureano was believed to be living and selling narcotics, for firearms and

evidence of narcotics trafficking.  execute a warrant to search a third-floor apartment.

Complaint at ¶10(a), (b). 29.        At around 6 a.m. on February 1, 2022, Plaintiff was

descending the stairs at 890 Elsmere Place.

30.      As he was about to descend the last flight of stairs, defendants LESLIE GAUVIN and

HECTOR RODRIGUEZ appeared in the lobby and began to mount the stairs.

31.      Both GAUVIN nor RODRIGUEZ were in plain clothes and neither identified himself as a

law enforcement officer.

32.      As they ascended, both GAUVIN and RODRIGUEZ produced pistols.

33.      When they reached the mid-floor landing on which Plaintiff was standing, in the belief  that

Plaintiff "*may have been* conducting a narcotics sale and was alerting" their target to the

arrival of the police," GAUVIN and RODRIGUEZ seized Plaintiff under arrest.  Id.

Complaint at ¶10(c).

34.     Either GAUVIN or RODRIGUEZ or both handcuffed Plaintiff's arms behind his back.

35.     Either GAUVIN or RODRIGUEZ or both reached into Plaintiff's jacket pockets.

36.     Either GAUVIN or RODRIGUEZ or both found, *inter alia*: (i) vials containing what

appeared to be cocaine base; (ii) ziplock bags containing what appeared to be powder

cocaine; and (iii) glassines of a substance that "appeared to be" fentanyl.

B. <u>NYPD Detective Jeremy R. Veit Declined To Execute A Draft Complaint Which Alleged Facts Sufficient To Establish Probable Cause To Arrest For A Narcotics Offense</u>

37.    At 12:53:00 p.m. on February 1, 2022, S.D.N.Y. AUSA Rushmi Bhaskaran emailed a first

draft of a Complaint, "(hereinafter "Complaint V.1"), to Detective Jeremy R. Veit, the

Government's designated "Case Agent".   See 3502-11.

38.    In Paragraph 10(b) of Complaint V.1, AUSA Bhaskaran proposed a description of his

arresting officers' initial observation of Plaintiff that would have established probable

cause to arrest

Plaintiff:

> Upon entering the lobby, the Officers saw an individual, later identified as MARCO DRUSKOVICH, the defendant, standing at the top of the first flight of stairs. The NYPD Officers observed that DRUSKOVICH appeared to be making hand-to-hand sales to two drug customers standing in the Lobby. As the Officers approached DRUSKOVICH, DRUSKOVICH yelled, in substance As the Officers approached DRUSKOVICH, DRUSKOVICH yelled, in substance and in part, and in the direction of the third floor (i.e., where Apartment-1 is located), that the police were coming. After placing DRUSKOVICH under arrest, the Officers searched him.  2022.02.01 Oddman et al Complaint V.1 at ¶10(b).

39.    Complaint V.1 was never filed.

C. <u>AUSA Bhaskaran Filed A Complaint That Failed To Aver Probable Cause To Arrest</u> <u>Plaintiff</u> <u>For Any Federal Offense.</u>

40.    At 2:02:00 p.m. on February 1, 2022, AUSA BHASKARAN emailed a second draft of the

Complaint (hereinafter "Complaint V.2") to Defendant VEIT, asking him to "Please give

one last read."  3502-12.

41.    Absent from Complaint V.2 was any allegation justifying officers' decision to arrest and

search Plaintiff:

> b. At approximately 6:00 a.m., the NYPD Officers entered the lobby (the "Lobby") of Building-1. Upon entering the Lobby, the Officers saw an individual, later identified as MARCO DRUSKOVICH, the defendant, standing at the top of the first flight of stairs, speaking to two individuals, who appeared to be under the influence of narcotics, and who were standing at the bottom of the flight of stairs.

7

    c. As the Officers approached DRUSKOVICH, DRUSKOVICH yelled, in substance and in part, and in the direction of the third floor (i.e., where Apartment-1 is located), that the police were coming. *At this point*, the NYPD *Officers believed* that DRUSKOVICH *may have been* conducting a narcotics sale, and was alerting *Laureano* about the police's arrival. The NYPD Officers placed DRUSKOVICH under arrest. They then searched DRUSKOVICH and found the following in his jacket pocket: approximately: 19 black vials, 15 yellow vials, and 6 ziplock bags, each containing a rock-like substance that appeared to be, based on my training and experience, cocaine base; and(ii) 61 glassines of a substance that appears to contain fentanyl, for the reasons explained below.
22 m 1052

42.    At 2:44 p.m., AUSA BHASKARAN emailed Complaint V.2 to the Magistrate Court for

filing.

43.    At 2:46 p.m, the Mag Clerk docketed the Complaint as 1:22-mj-01052-UA.

44.    The Complaint charged Plaintiff in the action <u>U.S.A. v, Oddman et al</u> with conspiring to

distribute: (i) fentanyl, in violation of 21 U.S.C. § 841(b) (1)(B); (ii) cocaine and cocaine

base, in violation of 21 U.S.C. § 841(b)(1)(C); and (iii) marijuana, in violation of 21 U.S.C.

§ 841(b)(1)(D).

February 1, 2022 Complaint 22 MAG 1052 at ¶ 9.

45.    On June 1, 2022 BHASKARAN presented VEIT's testimony to a federal grand jury.

46.    In response to BHASKARAN's request that he describe for the jury what happened as he

entered the apartment building where Plaintiff's arrest was affected, VEIT testified:

I was a member of a team that was going to be doing the entry into the Apartment 3C. When we entered into the lobby of the building, there was an individual standing on the staircase leading to the first floor landing.
When we got in there, that individual yelled up in the direction of the third floor apartment. He said: Hey, yo, the police. At that point, he was detained, and placed under arrest. And we moved past him to execute the search warrant at the apartment. AUSA: Let me just ask you a few follow up questions on that. You said that there is an individual at the top of the steps. Did there come a point in time when you identified that individual? A. Yes.
Q. Who was that individual?
A. That was Marco Druskovich.
Q. And you also testified that he was yelling something, in sum and substance, yo, the police. Is that correct? A. Yes.
Q. And what direction was he making that statement?

8

A. Upstairs, towards where the apartment we were heading was.

Q. And in addition to Druskovich, was there anyone else in the lobby?

A. There was two other individuals.

Q. How would you describe those individuals?

A. Those individuals described to me (verbatim) as under the influence of narcotics, transient, unkempt individuals that fit a pattern of -- that we believed was entering and exiting the lobby to purchase narcotics.

Q. And when you say those individuals fit a pattern, how did you make -- how did you determine that there was a pattern?

A. We did long term surveillance on the building identifying how the narcotics were sold – seeing individuals exit and enter the lobby on a steady basis.

Q. Now, what happened to Druskovich after he – you and the other law enforcement officers saw him in the lobby with the other individuals, and heard him say yo, the police?

A. He was placed under arrest and detained in the lobby.

Q. Was he searched incident to his arrest?

A. Yes.

Q. What crime did the officers believe had occurred when they placed him under arrest, with respect to Druskovich?

A. That he was acting in concert with the others in the apartment to distribute narcotics, and acting as a lookout and hindering us from apprehending those individuals in the apartment. Q. Was Druskovich searched after his arrest?

A. Yes.

47.    On September 9, 2022, Plaintiff filed a motion seeking suppression of the fruit of the

searches of his pockets and person as the products of a search performed after a seizure

unsupported by probable cause

D. Aware That AUSA Bhaskaran Was Unable To Unearth Facts Sufficient To Establish Probable Cause, AUSA Andrews Conspired To Manufacture Those Facts.

48.    On September 30, 2022, AUSA Mathew ANDREWS filed a notice of appearance.

49.    On September 30, 2022, the Government filed a Memorandum in Opposition to Plaintiff's

Motion to Suppress (ECF 33).

50.    Relating claims attributed to Det. GAUVIN's partner, Det. Hector RODRIGUEZ, some

seven months after the arrest, AUSA ANDREWS informed the Court that, no earlier than

3:27 a.m. on

9

February 1, 2022, in anticipation of executing the warrant for Laureano, RODRIGUEZ set up

surveillance outside 890 Elsmere.  USAO 3501-02.

51.    Notwithstanding VEIT's assertions in the Complaint and the Grand Jury, ANDREWS

affirmed:

Law enforcement, including one of the arresting officers ("Detective-1"),1 set up surveillance
outside of the Subject Building in anticipation of the search. For several hours, Detective-1
observed individuals walking into the lobby of the Subject Building (oftentimes with money
in their hands) and exit shortly after, which Detective-1 understood to be consistent with
users going to purchase narcotics. In addition, at least one of the individuals appeared to
leave the lobby of the Subject Building with a glassine of heroin in his hand.

At approximately 6 a.m., Detective-1 was notified that he should proceed inside 890 Elsmere
Place. As Detective-1 entered, he observed two individuals in the lobby who appeared to be
users of narcotics based on their physical appearance. Detective-1 further observed the
defendant and another individual standing at the top of the first flight of stairs. The defendant
appeared to have glassines in his hands, and the individual speaking with him appeared to be
holding money. Detective-1, who was in plain clothes, went up the stairs toward the
defendant and the individual. As Detective-1 neared the defendant, the defendant began
screaming "Yo" and "Police" upstairs in the direction of the Subject Apartment. Detective-1
arrested the defendant on probable cause of narcotics conspiracy, in violation of Title 21,
United States Code, Section 846, and obstruction, in violation of Title 18, United States
Code, Section 1503.

52.    In a November 1, 2022 interview, GAUVIN told AUSA ANDREWS and Det. WALTER

MIKOWSKI that he "didn't remember seeing anything in [Plaintiff's] hands."

53.    In a November 1, 2022 interview, VEIT told AUSA ANDREWS and Det. WALTER

MIKOWSKI that he entered "roughly 30 seconds to a minute after" GAUVIN and RODRIGUEZ.

When he first saw GAUVIN and RODRIGUEZ, they were on the staircase and had already seized

and searched Plaintiff.

54.    VEIT explained to ANDREWS and MIKOWSKI that he had spoken with RODRIGUEZ for

a few moments at the time of the arrest at which point RODRIGUEZ had offered that Plaintiff had drugs

in his pocket and that he had been yelling upstairs.  VEIT spoke with RODRIGUEZ again shortly after

executing the warrant.

55.     Seeking to explain why RODRIGUEZ's claim that he had seen Plaintiff sell drugs to an
         unapprehended buyer on the staircase had been omitted from Complaint V.2, VEIT, who himself
         never noticed the phantom buyer, claimed that, in assisting in the drafting of a criminal
         Complaint, his ordinary practice was to rely on only a brief conversation with the arresting
         officers rather than to conduct a comprehensive debriefing to accurately assemble the facts
         underlying a claim of probable cause.

56.     VEIT told ANDREWS and MIKOWSKIthat he didn't do an exhaustive interview of the
         arresting officers because VEIT had multiple responsibilities on takedown day including
         arrests of multiple other people.  According to VEIT, it was common to learn additional
         information from arresting officers after the initial complaint had been filed.

57.     There was no suggestion that ANDREWS or MIKOWSKI asked VEIT why, when VEIT
         penned his 3-page Report of Investigation a week later, on February 7, 2022, VEIT again
         made no mention of Rodriguez's version of events.

58.     There was no suggestion that ANDREWS or MIKOWSKI inquired of VEIT, BHASKARAN or
         anyone else why BHASKARAN had actually excised a similar claim that the arresting officers
         had witnessed Plaintiff make a hand-to-hand sale had come to be excised from Complaint V.1
         and or why the claim had been omitted from VEIT's June 1, 2022 Grand Jury testimony.

59.     On November 3, 2022, the district court ordered that an evidentiary hearing be held on
         November 15, 2022 to resolve disputed questions of material fact.

60.     In a November 14, 2022 filing, Plaintiff asked the district court to sign a subpoena requiring
AUSA BHASKARAN to testify about the extent of her factfinding in composing the Complaint.

61.     Plaintiff argued, in pertinent part:

        The defense would ask the Court to have the Government make clear on the record that
        its decision to deny the defense request was made at the conclusion, rather than in lieu
        of, a Touhy review. At least to the extent that a collective decision by the DOJ hierarchy
        that
        AUSA Bhaskaran's testimony is irrelevant might influence its own relevancy determination,

it would seem that the Court should. While the defense might not have a right to that information, should the Court ultimately determine that any detectives are lying, it would be useful, and likely important to know who in the Government hierarchy put both the defendant, and its frontline prosecutors, at risk by failing to figure that out.

While whether or not the complaint is deficient in probable cause may still be debatable, what is certain is that the Government's official position here is that AUSA Bhaskaran failed to amass all the facts available to her before composing it.  One question before the Court, then, is whether the Government's representation is accurate, and there were actually further facts to gather on February 1, 2022.  If there indeed were, a subsidiary question important to the goal of judicial economy, would be whether the failure to gather them was the product of incompetence.  If there were no further facts to gather, the assertions in the Government's opposition were false. While police testimony might only inferentially illuminate them, AUSA Bhaskaran's testimony would answer these questions directly.  I, for one, would prefer that neither the Court nor my client have to rely on my skill at cross-examination for the answers to them. The defense would therefore ask that the Court sign the attached subpoena commanding the Government to produce AUSA Bhaskaran.

62.    In a letter filed November 14, 2022, BHASKARAN and ANDREWS informed Judge Cronan that, during the course of its preparation for the scheduled suppression hearing, the Government had "learned that the anticipated testimony set forth in our prior submissions has changed."

63.    BHASKARAN and ANDREWS explained that the Government would "no longer rely on evidence stemming from the defendant's arrest, including the narcotics found on his person." Because that evidence "underlies the core of the pending charges, the Government" pledged to "ask the Court to Order the defendant's pre-trial release on his own recognizance" at the next day's scheduled appearance.

<u>DAMAGES</u>

64.    As a direct result of the defendants' wrongful conduct, Plaintiff Marco Druscovich was wrongfully incarcerated under the notoriously horrific conditions that have long prevailed at the Bureau of Prisons' Metropolitan Detention Center in Brooklyn, NY for the 288 days from February

1, 2022 through November 15, 2022.

65.    Plaintiff lost part of his ear when he was attacked by another MDC detainee.

66.     Along with the emotional distress caused by life in MDC's violent environment, Plaintiff feared that Defendants' false claims would result in a criminal convicted and the imposition of a prolonged sentence to federal prison.

67.     As a direct result of the defendants' wrongful conduct, Plaintiff Marco Druscovich was terminated from his employment as a trucker's helper at Driscoll Foods in Wayne, New Jersey.

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983. Unlawful Seizure/False Arrest
in violation of <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388
(1971) as well as the Fourth, Fifth, and Fourteenth Amendments** to the
United States Constitution**. All Individual Defendants.**

68.     Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

69.     `       GAUVIN, RODRIGUEZ and the other N.Y.P.D. defendants willfully and intentionally seized, arrested, searched and detained Plaintiff and caused him to be confined imprisoned, without probable cause, without a reasonable basis to believe such cause existed and without Plaintiff's consent.

70.     The N.Y.P.D. defendants observed no criminal conduct on Plaintiff's part on the date of his arrest.  Despite the absence of sufficient legal cause, Plaintiff was arrested and jailed.

71.     To the extent that any of the individual defendants did not affirmatively engage in this conduct, each such defendant was aware of the arresting officers' misconduct, had ample opportunity to intervene and prevent or limit the constitutional harms being visited on Plaintiffs, but failed to intervene in any way.

13

72.    By so doing, the individual defendants passively participated in and acceded to plaintiff's

false arrest and imprisonment, and thereby violated and aided and abetted in the violation of

plaintiff's rights under the Fourth Amendment of the United States Constitution.


### SECOND CAUSE OF ACTION

**42 U.S.C. § 1983. Malicious prosecution in violation of <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971) as well as the Fourth, Fifth, and Fourteenth Amendments. All Individual Defendants.**

73.    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if

fully set forth herein.

74.    The Individual Defendants, acting individually and in concert with others, acted knowingly,

willfully, intentionally, and with actual malice to initiate and/or to continue criminal

proceedings against Plaintiff.

75.    They did so without probable cause and intentionally caused Plaintiff to be deprived of his

liberty.

76.    The proceedings terminated in Plaintiff's favor.

77.    The Individual Defendants are liable for their violations of Plaintiff's constitutional rights,

and all of Plaintiff's resulting damages, in accordance with 42 U.S.C. § 1983, <u>Bivens v. Six

Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971) and the Fourth, Fifth, and Fourteenth

Amendments to the United States Constitution.

78.    Each of the Defendants named in this Count also is liable for unreasonably failing to

intervene to prevent such infringement of Plaintiff's constitutional rights.

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983. Evidence fabrication in violation of <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971) as well as the Fourth, Fifth, Sixth, and Fourteenth Amendments. All Individual Defendants.**

79.    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

80.    The Individual Defendants, acting individually and/or in concert with others, acted deliberately, willfully, recklessly, and/or with deliberate indifference to the truth, to fabricate or manufacture false or patently unreliable witness statements and false or materially misleading documentary evidence implicating Plaintiff in the crime.

81.    The evidence they fabricated or manufactured includes but is not limited to:

a.    Detective Hector Rodriguez's November 1, 2022 statements to AUSA Andrews and Det. Walter Mikowski that when he and Detective Leslie Gauvin first entered the lobby of 890 Elsmere in advance of the raid, he saw a man with money in his hands standing on the landing talking with Plaintiff and that Plaintiff then had a glassine of heroin in his hand.

## FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 and N.Y.C. Admin. Code §§ 8-802–8-803. Failure to intervene. All Individual Defendants.

82.    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

83.    Alternatively, the individual defendants had an affirmative duty to Plaintiff to intervene to protect his above-mentioned constitutional and statutory rights from infringement by other government officials.

84.    Each of the Individual Defendants knew that Plaintiff's constitutional and statutory rights would be violated if s/he did not intervene to prevent such violations.

85. Each of the Individual Defendants had reasonable opportunities to intervene to prevent such infringement of Plaintiff's constitutional and statutory rights.

86. Nevertheless, each of the Individual Defendants deliberately, willfully, recklessly, and/or with deliberate indifference failed to take reasonable steps to intervene.

87. As a result of the Individual Defendants' failure to intervene, Plaintiff's liberty was infringed or curtailed, in violation of his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights and N.Y.C. Admin. Code §§ 8-802–8-803.

FIFTH CAUSE OF ACTION

42 U.S.C. § 1983 Monell municipal liability for conduct of police officers relating to withholding exculpatory evidence, fabrication of evidence, and initiating the prosecution without probable cause — Defendant City of New York

88. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

89. The Police Commissioner and police officers employed by the NYPD are agents and employees of Defendant City of New York.

90. At all times relevant to the Complaint, NYPD detectives VEIT, RODRIGUEZ, GAUVIN BOYLAN and MIKOWSKI were acting in concert with each other and other unknown officers and supervisors.

91. Under the principles of municipal liability for federal civil rights violations, the City's Police Commissioner or his authorized delegates, during all times relevant to this Complaint, had final responsibility for training, instructing, supervising, and disciplining police officers and other

16

employees and agents of the NYPD with respect to the investigation and prosecution of criminal

matters, including but not limited to requirements governing:

a. the constitutional obligation not to fabricate evidence for use against criminal suspects and defendants in criminal proceedings;

b. the constitutional obligation not to give false or misleading testimony;

c. the constitutional obligation not to effect an arrest in the absence of probable cause

d. the constitutional obligation not to initiate or continue a prosecution without probable cause;

e. the constitutional obligation to preserve and make timely disclosure to the United States Attorney's Office of all material evidence or information ("Brady material") favorable to a person suspected, accused or convicted of criminal conduct, including, but not limited to, evidence of innocence as well as evidence affecting the credibility of prosecution witnesses, and to refrain from making reports that, because they omitted such information, were false or misleading.

f. the constitutional obligation to intervene when other officers, whether employees of the NYPD or another agency, are violating the constitutional obligations listed above in subparagraphs a through e.

92.     During all times material to this Complaint, the City, through its policymaking officials in the

NYPD, owed a duty to the public at large and to Plaintiff to implement policies, procedures,

customs, and practices sufficient to prevent, deter, and avoid conduct by their subordinates that

would result in the violation of the aforementioned constitutional rights of criminal suspects or

defendants and of other members of the public.

93.     These policymakers knowingly and intentionally breached, or were deliberately indifferent

to, this duty.

94.     At the same time as NYPD policymaking officials were deliberately indifferent to

constitutional violations by their employees and agents, these officials created substantial

incentives for their employees and agents to commit such constitutional violations, by failing to

discipline, and often even rewarding and promoting, officers previously accused of and deemed

liable for such violations.

17

95.    The aforesaid deliberate or de facto policies, procedures, regulations, practices, and/or

customs (including the failure to properly instruct, train, supervise, and/or discipline employees)

were implemented or tolerated by policymaking officials for Defendant City of New York—

including but not limited to the Police Commissioner—who knew, or should have known:

a.    to a moral certainty that such policies, procedures, regulations, practices, and/or customs
concern issues that regularly arise in the investigation of criminal cases;

b.    that such issues present NYPD employees and agents with difficult choices of the sort that
instruction, training, supervision, and discipline will make less difficult;

c.    that NYPD employees and agents facing such issues have strong incentives to make the
wrong decisions, particularly given the institutional pressure for NYPD employees and agents to
make arrests, close cases, and secure indictments and convictions;

d.    that the wrong choice by NYPD employees and agents concerning such issues will frequently
cause the deprivation of the constitutional rights of an accused person and cause him constitutional
injury; and

e.    that NYPD employees and agents had a history of making wrong choices in such matters.

96.    At the time of Plaintiff's arrest and prosecution, NYPD policymaking officials were on notice

of the risk of misconduct by NYPD employees and agents that would violate the constitutional

obligations identified in ¶ 91, *supra*.

97.    Policymaking officials were on notice based in part on numerous decisions of the United

States Supreme Court and other state and federal courts discussing the difficult issues that regularly

arise for police officers during criminal investigations, including issues relating to lineup

identification, documenting witness interviews, conducting witness interviews, disclosing

Brady material, and other phases of criminal investigations.

98.    Policymaking officials were also on notice based on the inherent obviousness of the need to

train, supervise, and discipline police officers with respect to their constitutional obligations to

counteract the pressure on such officers to "close" cases and to obtain arrests and convictions.

99.    Policymaking officials were further on notice based on numerous credible allegations that NYPD officers had manufactured false or unreliable identification evidence, witness statements, and other evidence, and knowingly given false or misleading testimony, in violation of the constitutional obligations identified in ¶ 91, *supra*.

100.    Policy makers were on further notice based on judicial decisions directly criticizing the NYPD for failing to train and supervise officers in their Brady obligations and for failing to adopt adequate Brady disclosure policies, and putting the NYPD on notice that the City could be held liable for its failure to adequately train police officers and investigators regarding their obligations to disclose evidence that favors criminal defendants under Brady.  See, e.g., Carter v. Harrison, 612 F.Supp.749 (E.D.N.Y June 21, 1985) (McLaughlin, D.J., adopting the Report and Recommendation of then Magistrate Shira A. Scheindlin).

101.    Many detectives were unaware they had an obligation to make a record of or to otherwise inform prosecutors of information that was favorable to the criminal suspect or defendant. 102.

In addition, the New York City Police Commissioner and his delegates did not discipline police officers found to have been responsible for the violation of criminal suspects' or defendants' right to disclosure of favorable evidence and not to be prosecuted based upon false or misleading evidence.

103.    Police officers thus understood they would suffer no adverse consequence if they withheld Brady material from prosecutors or provided prosecutors with fabricated evidence.

104.    As a result of the City's deliberate or de facto policies, procedures, regulations, practices, customs, and/or inadequate training, detectives, acting deliberately, intentionally, willfully, recklessly and/or out of ignorance of their constitutional obligations, knowingly and intentionally fabricated evidence that they forwarded to prosecutors for use in Plaintiff's prosecution.

105.   NYPD policymarker's deliberate indifference to such misconduct directly, foreseeably, proximately, and substantially caused the violations of Plaintiff's federal constitutional rights in this case and his resulting injuries.

WHEREFORE, MARCO DRUSKOVICH, demands judgment in a sum to be determined at trial and is further entitled to punitive damages against the individual defendants in an amount to be determined at trial, plus reasonable attorneys' fees, costs, and disbursements of this action.

20

Dated: New Rochelle, New York

January 21, 2025

BY:


S/_____

THOMAS EDDY, ESQ.
Attorney for Plaintiff Marco Druskovich
300 Pelham Rd, Suite 8R
New Rochelle, N.Y. 10805
(917) 710-1098
Email: thomaseddyjd@gmail.com