USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/28/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

x

MARCO DRUSKOVICH,

Plaintiff,

-against-

MATHEW ANDREWS, ET AL.

Defendants.

x

25-cv-572 (CM)

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

McMahon, J.:

Plaintiff Marco Druskovich ("Plaintiff") brings this action against the City of New York and Defendants Mathew Andrews ("Andrews"), Rushmi Bhaskaran ("Bhaskaran"), Leslie Gauvin ("Gauvin"), Hector Rodriguez ("Rodriguez"), Ryan Boylan ("Boylan"), Jeremy Veit ("Veit") (collectively, the "Federal Defendants") and Walter Mikowski ("Mikowski") pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Plaintiff contends that he was arrested and subsequently prosecuted without probable cause. Plaintiff also asserts a failure to intervene claim against the Federal Defendants and Mikowski pursuant to New York City Administrative Code §§ 8-802–8-803.

For the reasons set forth below, Defendants' motions to dismiss are GRANTED. Plaintiff's First Amended Complaint is dismissed in its entirety.

**BACKGROUND**

Plaintiff Marco Druscovich ("Plaintiff") is a resident of the State of New Jersey.

Defendants Mathew Andrews ("Andrews") and Rushmi Bhaskaran ("Bhaskaran") are employed by the United States Department of Justice as Assistant United States Attorneys in the Southern District of New York.[1]

Defendants Leslie Gauvin[2] ("Gauvin"), Hector Rodriguez ("Rodriguez"), and Jeremy Veit ("Veit") are detectives employed by the New York City Police Department. Defendant Ryan Boylan ("Boylan") is a Sergeant employed by the New York Police Department. Each is being sued in both his or her official and individual capacities. Because the conduct alleged in the complaint concerns actions taken while these defendants were acting in a federal capacity as federal task force officers ("TFOs"), these defendants are considered to be federal employees, notwithstanding the fact that they are actually employed by the City of New York. Together with AUSAs Andrews and Bhaskaran, they are collectively referred to as the "Federal Defendants."

Defendant Walter Mikowski ("Mikowski") is a detective employed by the New York City Police Department. Unlike the other individual defendants, the allegations against Mikowski do not concern any actions taken in a federal capacity. It does not appear that Mikowski has been served with process in this case; he has not appeared in the action.

Defendants Does 2-10 are officers, detectives, supervisors, and/or other agents and employees of the City of New York and the Department of Justice. They are being sued in their official and individual capacities.

---

[1] AUSAs Andrews and Bhaskaran are no longer employed by the U.S. Attorney's Office for the Southern District of New York, but are referred to herein as "AUSA Andrews" and "AUSA Bhaskaran" because the allegations in Plaintiff's FAC concern conduct undertaken while acting as government officials.

[2] Leslie Gauvin has since retired from the New York Police Department.

## FACTUAL ALLEGATIONS

The conduct alleged in the complaint concerns Plaintiff's arrest on February 1, 2022 and his subsequent prosecution in federal court.

Plaintiff's Arrest

This being a motion to dismiss the complaint, the Court accepts as true all of Plaintiff's factual allegations concerning the events surrounding his arrest. Plaintiff's reliance on the contents of his criminal complaint for purposes of his malicious prosecution claim does not extend to reliance on the document insofar as it sets forth the circumstances of his arrest.

Early in the morning of February 1, 2022, TFO Gauvin led a joint federal-state Organized Crime Drug Enforcement Task Force, comprised of agents from the Drug Enforcement Administration ("DEA"), the New York State Police, and the New York Police Department ("NYPD"). FAC, ¶ 27. Officers assembled outside 890 Elsmere Place in the Bronx to arrest an individual by the name of Carlos Laureano ("Laureano") on murder, firearm, and narcotics-related charges and to execute a warrant to search a third-floor apartment where Laureano was believed to be living for firearms and evidence of narcotics trafficking. *Id.*, ¶ 28.

At approximately 6:00 AM, Plaintiff was descending the stairs at 890 Elsmere Place. *Id.* As he was about to descend the last flight of stairs, TFOs Gauvin and Rodriguez, dressed in plain clothes, appeared in the lobby and began to climb the stairs. *Id.*, ¶¶ 30–31. Neither Gauvin nor Rodriguez identified himself as a law enforcement officer. *Id.*, ¶ 31. As they ascended the stairs, Gauvin and Rodriguez pulled out pistols. *Id.*, ¶ 32. When they reached the mid-floor landing on which Plaintiff was standing, they placed Plaintiff under arrest. From reading the criminal complaint, Plaintiff alleges that the officers believed he might have been conducting a drug

transaction and/or trying to alert Laureno to their presence, but Plaintiff does not allege that he was doing either of those things at the time he was arrested. *Id.*, ¶ 33.

One or both of the officers handcuffed Plaintiff's arms behind his back and reached into his jacket pockets. *Id.*, ¶¶ 34–35. There the officers found vials containing what appeared to be cocaine base, Ziploc bags containing what appeared to be powdered cocaine, and glassines of a substance that appeared to be fentanyl. *Id.*, ¶ 36.

<u>Federal Proceedings</u>

Once we get to the prosecution, the FAC repeatedly references and quotes from – and thus incorporates by reference – documents from Plaintiff's criminal case (*USA v. Druskovich*, 22-cr-309), which is the predicate for the civil complaint in the instant action. The Court will consider the documents from Plaintiff's underlying criminal case for their contents but not for the truth of the matters asserted therein because, to the extent of what they contain, they are "integral" to Plaintiff's civil complaint. *See McLennon v. City of New York*, 171 F. Supp. 3d 69, 89 (E.D.N.Y. 2016) ("In resolving motions to dismiss, district courts in this Circuit have found documents from a plaintiff's underlying criminal case, including criminal complaints, to be 'integral' to the plaintiff's complaint.").

At 12:53 PM on February 1, AUSA Bhaskaran emailed a first draft of a Complaint to TFO Veit, the designated "Case Agent." FAC, ¶ 37.

Paragraph 10(b) of the draft Complaint included the following language:

> Upon entering the lobby, the Officers saw an individual, later identified as MARCO DRUSKOVICH, the defendant, standing at the top of the first flight of stairs. The NYPD Officers observed that DRUSKOVICH appeared to be making hand-to-hand sales to two drug customers standing in the Lobby. As the Officers approached DRUSKOVICH, DRUSKOVICH yelled, in substance and in part, and in the direction of the third floor (i.e., where Apartment-1 is located), that the police were coming. After placing DRUSKOVICH under arrest, the Officers searched him.

*Id.*, ¶ 38.

This draft Criminal Complaint was never filed. *Id.*, ¶ 39.

At 2:02 PM, AUSA Bhaskaran emailed a second draft of the Complaint to TFO Veit, asking him to, "Please give one last read." FAC, ¶ 40.

The second draft of the Complaint stated:

> At approximately 6:00 a.m., the NYPD Officers entered the lobby (the "Lobby") of Building-1. Upon entering the Lobby, the Officers saw an individual, later identified as MARCO DRUSKOVICH, the defendant, standing at the top of the first flight of stairs, speaking to two individuals, who appeared to be under the influence of narcotics, and who were standing at the bottom of the flight of stairs.
>
> As the Officers approached DRUSKOVICH, DRUSKOVICH yelled, in substance and in part, and in the direction of the third floor (i.e., where Apartment-1 is located), that the police were coming. At this point, the NYPD Officers believed that DRUSKOVICH may have been conducting a narcotics sale, and was alerting Laureano about the police's arrival. The NYPD Officers placed DRUSKOVICH under arrest. They then searched DRUSKOVICH and found the following in his jacket pocket: approximately: 19 black vials, 15 yellow vials, and 6 ziplock bags, each containing a rock-like substance that appeared to be, based on my training and experience, cocaine base; and(ii) 61 glassines of a substance that appears to contain fentanyl.

FAC, ¶ 41. Conspicuously absent from this second draft was any language that Plaintiff was observed making a hand-to-hand sale of drugs.

At 2:44 P.M., AUSA Bhaskaran emailed the second draft of the Complaint to the court for filing. FAC, ¶ 42. The Complaint was docketed as 1:22-mj-01052-UA at 2:46 PM. It charged Plaintiff with conspiracy to distribute (i) fentanyl, in violation of 21 U.S.C. § 841(b) (1)(B); (ii) cocaine and cocaine base, in violation of 21 U.S.C. § 841(b)(1)(C); and (iii) marijuana, in violation of 21 U.S.C. § 841(b)(1)(D). FAC, ¶ 44.

On June 1, 2022, TFO Veit testified before a federal grand jury. FAC, ¶ 45. When asked to describe for the jury what happened as he entered the apartment building at 890 Elsmere Place, Veit testified:

A: I was a member of a team that was going to be doing the entry into the Apartment 3C. When we entered into the lobby of the building, there was an individual standing on the staircase leading to the first floor landing. When we got in there, that individual yelled up in the direction of the third floor apartment. He said: Hey, yo, the police. At that point, he was detained, and placed under arrest. And we moved past him to execute the search warrant at the apartment.

Q: Let me just ask you a few follow up questions on that. You said that there is an individual at the top of the steps. Did there come a point in time when you identified that individual?

A. Yes.

Q. Who was that individual?

A. That was Marco Druskovich.

Q. And you also testified that he was yelling something, in sum and substance, yo, the police. Is that correct?

A. Yes.

Q. And what direction was he making that statement?

A. Upstairs, towards where the apartment we were heading was.

Q. And in addition to Druskovich, was there anyone else in the lobby?

A. There was two other individuals.

Q. How would you describe those individuals?

A. Those individuals described to me (verbatim) as under the influence of narcotics, transient, unkempt individuals that fit a pattern of -- that we believed was entering and exiting the lobby to purchase narcotics.

Q. And when you say those individuals fit a pattern, how did you make -- how did you determine that there was a pattern?

A. We did long term surveillance on the building identifying how the narcotics were sold – seeing individuals exit and enter the lobby on a steady basis.

Q. Now, what happened to Druskovich after he – you and the other law enforcement officers saw him in the lobby with the other individuals, and heard him say yo, the police?

A. He was placed under arrest and detained in the lobby.

Q. Was he searched incident to his arrest?

A. Yes.

Q. What crime did the officers believe had occurred when they placed him under arrest, with respect to Druskovich?

A. That he was acting in concert with the others in the apartment to distribute narcotics, and acting as a lookout and hindering us from apprehending those individuals in the apartment.

Q. Was Druskovich searched after his arrest?

A. Yes.

FAC, ¶ 46.

The same day, the grand jury indicted Plaintiff on one count of possession with intent to distribute narcotics, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of narcotics conspiracy, in violation of 21 U.S.C. § 846. *See USA v. Druskovich*, 22-cr-309, Dkt. No. 15.

On September 9, 2022, Plaintiff moved to suppress the drugs that had been found on his person, on the ground that the officers had no probable cause to arrest him. FAC, ¶ 47. The Government opposed Plaintiff's suppression motion on September 30, 2022. *Id.*, ¶ 49. Finding "that there exist material questions of fact in dispute between the parties," the district court ordered that an evidentiary hearing be held on November 15, 2022. *See USA v. Druskovich*, 22-cr-309, Dkt. No. 37.

In a September 30, 2022 letter to the court, AUSA Andrews summarized statements attributed to TFO Rodriguez, including that an officer saw Plaintiff with glassines in his hands speaking to an individual who appeared to be holding money. The letter stated that:

> Law enforcement, including one of the arresting officers ("Detective-1"),1 set up surveillance outside of the Subject Building in anticipation of the search. For several hours, Detective-1 observed individuals walking into the lobby of the Subject Building (oftentimes with money in their hands) and exit shortly after, which Detective-1 understood to be consistent with users going to purchase narcotics. In addition, at least one of the individuals appeared to leave the lobby of the Subject Building with a glassine of heroin in his hand.
>
> At approximately 6 a.m., Detective-1 was notified that he should proceed inside 890 Elsmere Place. As Detective-1 entered, he observed two individuals in the lobby who appeared to be users of narcotics based on their physical appearance. Detective-1 further observed the defendant and another individual standing at the top of the first flight of stairs. The defendant appeared to have glassines in his hands, and the individual speaking with him appeared to be holding money. Detective-1, who was in plain clothes, went up the stairs toward the defendant and the individual. As Detective-1 neared the defendant, the defendant began screaming "Yo" and "Police" upstairs in the direction of the Subject Apartment. Detective-1 arrested the defendant on probable cause of narcotics conspiracy, in violation of Title 21, United States Code, Section 846, and obstruction, in violation of Title 18, United States Code, Section 1503.

FAC, ¶ 51; *USA v. Druskovich*, 22-cr-309, Dkt. No. 43. TFO Veit did not testify that Plaintiff was holding glassines or that he was engaged in conversation with someone who was holding money.

A month later, during an interview held on November 1, 2022, TFO Gauvin told AUSA Andrews and Detective Mikowski (who was not present during Plaintiff's arrest) that he "didn't remember seeing anything in [Plaintiff's] hands." FAC, ¶ 52.

On the same day, TFO Veit told AUSA Andrews and Detective Mikowski that he entered the apartment building "roughly 30 seconds to a minute" after Gauvin and Rodriguez, and that when he first saw Gauvin and Rodriguez, they had already arrested and searched Plaintiff. FAC, ¶ 53. TFO Veit also stated that he had spoken with Detective Rodriguez at the time of the arrest, at which point Rodriguez mentioned that, "Plaintiff had drugs in his pocket and that he had been yelling upstairs." FAC, ¶ 54. TFO Veit's grand jury testimony was consistent with this recounting

of the facts, not with the story that Rodriguez later told the AUSAs as recounted in Andrews' September 30 letter. *Id.*

Obviously, some of what was said during these interviews was inconsistent, or arguably inconsistent, with the contents of the both the draft Criminal Complaint and the Criminal Complaint that was ultimately filed. TFO Veit explained to AUSA Andrews and Detective Mikowski that his ordinary practice when assisting in drafting a criminal complaint was to rely on a brief conversation with the arresting officers, rather than to conduct a comprehensive debriefing. *Id.*, ¶ 55. Veit stated that he did not conduct an exhaustive interview of the arresting officers because he had multiple responsibilities that day, including arrests of multiple individuals. He also said that it was common to learn additional information from arresting officers after the initial complaint had been filed. *Id.*, ¶ 56.

One day prior to the hearing, AUSAs Bhaskaran and Andrews informed the court that the anticipated testimony of TFO Rodriguez had changed and that, as a result, the Government no longer intended to rely on evidence stemming from Plaintiff's arrest, including the narcotics found on his person. *See USA v. Druskovich*, 22-cr-309, Dkt. No. 46. The Government consented to Plaintiff's pre-trial release on his own recognizance, "as the evidence at issue underlies the core of the pending charges." *Id.*

On November 17, 2022, the Government filed a *nolle prosequi* disposing of the case against Plaintiff. *See USA v. Druskovich*, 22-cr-309, Dkt. No. 50. The Government explained that because it no longer intended to rely on the narcotics recovered from Plaintiff's person on the date of his arrest, it had "determined that it cannot prove, beyond a reasonable doubt, the charges contained in the Indictment." *Id.*, at 2; Dkt. No. 51.

Plaintiff alleges that as a result of Defendants' conduct, he was "wrongfully incarcerated under the notoriously horrific conditions that have long prevailed" at the Metropolitan Detention Center for 288 days. FAC, ¶ 64. While incarcerated at MDC, he was attacked by another detainee, resulting in the loss of his ear. *Id.*, ¶ 65. Plaintiff further alleges that "As a direct result of defendants' wrongful conduct, Plaintiff . . . was terminated from his employment as a trucker's helper at Driscoll Foods in Wayne, New Jersey." *Id.*, ¶ 67.

<u>Procedural History</u>

Plaintiff filed his complaint in the instant action on January 21, 2025, asserting claims of unlawful seizure and false arrest (Count 1), malicious prosecution (Count 2), and evidence fabrication (Count 3) against AUSAs Andrews and Bhaskaran and TFOs Rodriguez, Boylan, Veit, and Gauvin (the "Federal Defendants") and Detective Mikowski pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"). Dkt. No. 1. It also asserted a failure to intervene claim against the Federal Defendants and Mikowski under the New York City Administrative Code §§ 8-802-8-803 (Count 4) and a *Monell* claim against the City of New York (Count 5). The complaint contains no separate count alleging that he was searched illegally.

The complaint alleges that Plaintiff was arrested and indicted in the absence of probable cause based on an allegedly fabricated statement attributed to TFO Rodriguez – namely, that officers witnessed Plaintiff with glassines in his hand speaking to an individual holding money, which they believed to be a hand-to-hand drug sale. The allegedly fabricated statement was included in the initial draft of the criminal complaint, but was omitted from the version that was ultimately filed. No such evidence was presented to the grand jury. *See* FAC, ¶ 51.

On July 13, 2025, Plaintiff moved to amend his complaint to correct the spelling of Defendant Gauvin's name. Dkt. No. 39. The Court granted that motion on August 20, 2025. Dkt. No. 42. Plaintiff's First Amended Complaint was filed on September 19, 2025. Dkt. No. 55. No additional claims were added.

On October 3, 2025, the City of New York moved to dismiss Plaintiff's *Monell* claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 58.

On December 2, 2025, the Federal Defendants (AUSAs Andrews and Bhaskaran and TFOs Gauvin, Veit, Rodriguez, and Boylan) filed a Rule 12(b)(6) motion to dismiss the remaining claims. Dkt. No. 60.

Those motions to dismiss are presently before the Court.

## LEGAL STANDARD

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). A court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. THE COMPLAINT IS DISMISSED AS AGAINST DETECTIVE MIKOWSKI

The City has not moved to dismiss the complaint on behalf of Defendant Mikowski because he has not been served. *See* Dkt. No. 59, at 7 n.1. However, the City asks that the Court dismiss Plaintiff's claims against Mikowski, because the deadline to serve him has long since passed. *Id.*

Rule 4(m) provides that, "If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Plaintiff filed his complaint on January 21, 2025. *See* Dkt. No. 1. He was therefore required to serve Defendant Mikowski by April 21, 2025, or to show good cause for his failure to do so. To date, Plaintiff has not filed proof of service with the Court. As far as we can tell, he has made no effort to effect service on the detective.

The action is therefore dismissed against Mikowski without prejudice pursuant to Fed. R. Civ. P. 4(m).[3]

## II. AUSAS ANDREWS AND BHASKARAN ARE ENTITLED TO ABSOLUTE IMMUNITY

Defendants argue that the claims against AUSAs Andrews and Bhaskaran must be dismissed because they are, as federal prosecutors, absolutely immune from suit.

Defendants are correct.

Prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are "intimately associated with the judicial phase of the criminal process." *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (holding that absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it").

Plaintiff's claims against AUSAs Andrews and Bhaskaran are based on alleged acts that are clearly within the scope of their official duties and intimately associated with the judicial phase of the criminal process.

With respect to AUSA Bhaskaran, Plaintiff challenges her drafting of the criminal complaint, her decision to proceed with the prosecution, and her presentation of TFO Veit's testimony to the grand jury. All of these are prosecutorial functions to which absolute immunity

[3] Although I can only dismiss the complaint without prejudice where dismissal is predicated on failure to serve, I note that the events underlying this lawsuit took place in 2022, which means that the statute of limitations has likely run on any claims that might now be asserted against Det. Mikowski.

applies. *See Norales v. Acevedo*, 2022 WL 17958450, at *3 (2d Cir. Dec. 27, 2022); *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013).

As to AUSA Andrews, Plaintiff challenges certain filings he made on behalf of the government in connection with Plaintiff's suppression motion and his failure to ask certain questions of TFOs Veit and Gauvin during the November 1, 2022 interview. These functions are likewise shielded by absolute immunity. *See Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012).

Plaintiff argues that AUSAs Bhaskaran and Andrews are not entitled to absolute immunity "in the absence of any evidence that they were acting at their own discretion rather than pursuant to some supervisor's directive." Dkt. No. 64, at 6. That is not the law. Absolute immunity applies "not only to officials performing discretionary acts of a judicial nature," but also to individual employees "who act under [an] official's direction in performing functions closely tied to the judicial process." *Hill v. City of New York*, 45 F.3d 653, 660 (2d Cir. 1995).

Plaintiff's claims against AUSAs Andrews and Bhaskaran are, therefore, dismissed with prejudice.

## III. PLAINTIFF'S *BIVENS* CLAIMS (COUNTS 1-3) ARE DISMISSED WITH PREJUDICE

Plaintiffs' first, second, and third causes of action assert claims against the Federal Defendants (TFOs Gauvin, Veit, Boylan, and Rodriguez) for false arrest, malicious prosecution, and evidence fabrication pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[4]

---

[4] Plaintiff also asserts his *Bivens* claims as against AUSAs Andrews and Bhaskaran, who are entitled to absolute immunity, and as against Detective Mikowski, but as discussed above, he has not been served and the complaint has been dismissed as against him on that basis. *See supra* Sections I, II.

The Federal Defendants assert – and Plaintiff does not dispute – that TFOs Gauvin, Veit, Boylan, and Rodriguez are properly considered to be federal employees for the purposes of this action because the alleged conduct concerns actions taken as federally deputized officers in connection with a federal prosecution. *See* Dkt. No. 59, at 16; *Aikman v. Cnty. of Westchester*, 691 F. Supp. 2d 496, 498–99 (S.D.N.Y. 2010). Because Section 1983 actions are not properly brought against federal employees, *Aikman*, 691 F. Supp. 2d. at 498, *Bivens* provides the appropriate jurisdictional basis for Plaintiff's claims against the TFOs in their individual capacities. *See Ivey v. Lyman*, 2005 WL 1397134, at *2 (N.D.N.Y. June 1, 2005). To the extent that the complaint asserts claims under Section 1983 against these defendants, they must be dismissed.

Additionally, to the extent Plaintiff seeks to bring *Bivens* claims against the Federal Defendants in their official capacities, those claims are barred by sovereign immunity and must be dismissed. *See, e.g., Robinson v. Overseas Military Sales Corp.*, 21 F. 3d 502, 510 (2d Cir. 1994).

So the issue for decision is whether the complaint states a *Bivens* claim against any of the Federal Defendants in his individual capacity.

In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp, v. Malesko*, 534 U.S. 61, 66 (2001). "The purpose of the *Bivens* remedy is to deter individual federal officers from committing constitutional violations." *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quotation omitted).

The Supreme Court has strictly cabined *Bivens*' reach, implying a damages remedy against federal employees under *Bivens* in only three contexts: (1) unreasonable search and seizure under the Fourth Amendment, *Bivens*, 403 U.S. 388 (1971); (2) employment discrimination under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) inadequate medical treatment

of an inmate under the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). In recent years, "the Court has made clear that expanding the *Bivens* remedy is now a disfavored judicial activity," *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (internal quotations omitted), and "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert v. Boule*, 596 U.S. 482, 486 (2022).

Against that backdrop, the Court has set out a two-step test for the analysis of a proposed *Bivens* claim. *Egbert*, 596 U.S. at 483. First, a court asks "whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Id.* (internal quotations omitted). If a claim arises in a "new context," the court then asks whether there are "special factors" indicating that the judiciary is less equipped than Congress to determine if the action should proceed. *Id.*

The Federal Defendants move to dismiss Plaintiff's *Bivens* claims against them on the grounds that Plaintiff's claims for false arrest, malicious prosecution, and evidence fabrication do not fall within the three limited contexts in which the Supreme Court has recognized a *Bivens* remedy and special factors counsel against extending *Bivens* to his claims.

With respect to Plaintiff's claims of evidence fabrication and malicious prosecution, the Court agrees. The same may not be true of Plaintiff's false arrest claim – actually pleaded as a claim for "unreasonable seizure/false arrest" – which arguably falls within the scope of *Bivens*. However, that claim must be dismissed because it is time-barred.

**a. Plaintiff's Evidence Fabrication Claim (Count 3) is Dismissed**

Plaintiff effectively concedes that evidence fabrication claims are not cognizable under *Bivens* by failing to respond to this argument in his opposition brief. *See* Dkt. No. 64, at 14 (arguing only that *Bivens* should encompass false arrest and malicious prosecution claims, while failing to address evidence fabrication claim); *see also Tacon v. Cromwell*, 2024 WL 4275625, at

*10 n.15 (S.D.N.Y. Sept. 24, 2024). Plaintiff's evidence fabrication claim under *Bivens* should thus be dismissed as abandoned. *See Cardoso v. Wells Fargo Bank, N.A.*, 2022 WL 4368109, at *9 (S.D.N.Y. Sept. 20, 2022).

In any event, *Bivens* does not provide a cognizable basis for Plaintiff's evidence fabrication claim.

First, Plaintiff's evidence fabrication claim unquestionably presents a "new context" under *Bivens*. *See Sigalovskaya v. Braden*, 149 F.4th 226, 234 (2d Cir. 2025) ("In recent years, our sister circuits have found that claims involving the fabrication of evidence present a new *Bivens* context.") (Lee, J., concurring); *Selvam v. United States*, 570 F. Supp. 3d 29, 43 (E.D.N.Y. 2021) (*Bivens* does not provide a cause of action for fabrication of evidence), *aff'd on other grounds*, 2022 WL 6589550 (2d Cir. Oct. 11, 2022); *Parker v. Kraham*, WL 570521, at *6 (W.D.N.Y. Mar. 2, 2026) (collecting cases).

Moreover, special factors counsel against extending *Bivens* to Plaintiff's evidence fabrication claim, including the risk that a *Bivens* action would require the Court to interfere in the executive branch's investigative and prosecutorial functions. *See Abassi*, 582 U.S. at 141 (considering whether a *Bivens* action "would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch"). Specifically, it would require the Court to consider whether the alleged fabrication was "likely to influence a jury's decision" and whether "the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Selvam*, 570 F. Supp. 3d at 45 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278–80 (2d Cir. 2016)). Such an inquiry would implicate separation-of-powers considerations because it would require "a wide-ranging dive into . . . all evidence available to investigators, prosecutors, judges,

and juries." *Selvam*, 570 F. Supp. 3d at 45 (quoting *Annappareddy v. Pascale*, 996 F.3d 120, 138 (4th Cir. 2021)).

Also counseling hesitation is the fact that "Rather than establish a *Bivens*-style cause of action for fabrication of evidence, Congress has instead created other, more limited statutory mechanisms that allow victims of fabrication to recover in certain cases." *Selvam*, 570 F. Supp. 3d at 45. One such mechanism is the Hyde Amendment, which allows "courts to award attorney fees to criminal defendants who prevail against 'vexatious, frivolous, or . . . bad faith' positions taken by the government." *Farah v. Weyker*, 926 F.3d 492, 501 (8th Cir. 2019) (quoting Act of Nov. 26, 1997, Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (codified at 18 U.S.C. § 3006A note)); *see Selvam*, 570 F. Supp. 3d at 45–46. The decision to create a damages action against individual federal officers for evidence fabrication is "for Congress to make, not the Courts." *Selvam*, 570 F. Supp. 3d at 46 (quoting *Abassi*, 582 U.S. at 140).

Plaintiff's third cause of action is, therefore, dismissed.

**b. Plaintiff's Malicious Prosecution (Count 2) is Dismissed**

Plaintiff's malicious prosecution claim fares no better than his evidence fabrication claim; it is not cognizable under *Bivens*.

Plaintiff's reliance on *Powell v. United States*, 2020 WL 5126392 (S.D.N.Y.) to argue that his malicious prosecution falls within the scope of *Bivens* is unavailing. In *Powell,* Judge Hellerstein did not hold that a malicious prosecution claim could be brought under *Bivens.* In fact, he expressly recognized in *Powell* that malicious prosecution claim presented a new *Bivens* context, which was the same conclusion reached by other courts in this Circuit to have considered the issue. 2020 WL 5126392, at *7 (citing *Butler v. Hesch*, 2020 WL 1332476, at *11 (N.D.N.Y. Mar. 23, 2020) (collecting cases)).

Special factors also counsel hesitation in extending *Bivens* to Plaintiff's malicious prosecution claim. "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Abassi*, 582 U.S. at 145. Here, Congress has created an alternative remedial structure in the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, which provides for monetary damages for torts committed by federal employees in the course of their official duties.[5] The FTCA permits intentional tort claims against law enforcement officers arising out of "assault, battery, false imprisonment, false arrest, abuse of process, *or malicious prosecution.*" *Krebs v. United States*, 1999 WL 185263, at *2 (S.D.N.Y. Mar. 31, 1999) (citing 28 U.S.C. § 2680(h)) (emphasis added). Although "district courts [in the Second Circuit] have disagreed on whether the availability of [a Federal Torts Claims Act] action precludes a *Bivens* remedy in the wake of *Abbasi*," *Bueno Diaz v. Mercurio*, 442 F. Supp. 3d 701, 710–11 (S.D.N.Y. 2020), this Court agrees with the vast majority of cases, which have found the availability of the FTCA to be a special factor counseling hesitation in extending *Bivens* to cases that are expressly covered by the FTCA. *See Edwards v. Gizzi*, 2022 WL 309393, at *9 (S.D.N.Y. Feb. 2, 2022), *aff'd*, 107 F.4th 81 (2d Cir. 2024) (collecting cases); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020); *Scott v. Quay*, 2020 WL 8611292, at *9 (E.D.N.Y. Nov. 16, 2020).

But if this conclusion were wrong, and Plaintiff's malicious prosecution claim is cognizable under *Bivens*, that claim – which alleges that Plaintiff was charged with conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 841(a) in the absence of probable cause – would have to be dismissed in any event.

---

[5] The Court does not construe Plaintiff's complaint as asserting a claim under the FTCA because Plaintiff does not name the United States as a defendant as required by 28 U.S.C. § 1346. Moreover, nothing in the record suggests that Plaintiff exhausted his administrative remedies by presenting his claim to the appropriate federal agency as required by 28 U.S.C. § 2675(a).

Plaintiff's malicious prosecution claim implicates his constitutional rights arising under the Fourth Amendment. *Williams v. Young*, 769 F. Supp. 2d 594, 603 (S.D.N.Y. 2011). The elements of a malicious prosecution claim are: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions. *Adams v. City of New York*, 226 F. Supp. 3d 261, 269 (S.D.N.Y. 2016). A plaintiff must also establish a violation of his rights under the Fourth Amendment. *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 604 (E.D.N.Y. 2017).

The existence of probable cause is a complete defense to a malicious prosecution claim. *Stansbury v. Wertman*, 721 F.3d 84, 94–95 (2d Cir. 2013). "Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983); *see also Bey v. Fernandez*, 2018 WL 4259865, at *6 (E.D.N.Y. Sept. 5, 2018). Probable cause to prosecute is evaluated "in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest." *Drummond v. Castro*, 522 F.Supp.2d 667, 677–78 (S.D.N.Y. 2007) (internal citations and quotations omitted).

A grand jury's indictment, however, creates a presumption of probable cause. *Id.* To rebut that presumption, a plaintiff must show that "the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Ying Li*, 246 F. Supp. 3d at 611–12 (quoting *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006)).

Here, a grand jury indicted Plaintiff for conspiring to possess and distribute fentanyl, cocaine, and marijuana. The return of that indictment thus created a presumption of probable cause. *Alcantara v. City of New York*, 646 F. Supp. 2d 449, 460 (S.D.N.Y. 2009).

Plaintiff makes little, if any, effort to rebut this presumption. His complaint alleges no facts tending to show that the indictment was procured by fraud or perjury, the suppression of evidence, or other bad faith police conduct. Instead, Plaintiff argues that AUSA Andrews and Detective Rodriguez "resorted to outright lies in [the government's] efforts to sustain [the prosecution]." Dkt. No. 64, at 14.

But the complaint in this action includes no factual allegations even remotely suggesting that his prosecution was initiated based on false information or that any defendant acted in bad faith in initiating the prosecution. Indeed, as Plaintiff himself alleges, the allegedly fabricated statement – that officers witnessed Plaintiff making a hand-to-hand sale of narcotics – was not included in the criminal complaint that was ultimately filed, and was not part of the testimony that was presented to the grand jury. *See* FAC, ¶¶ 51, 58. In other words, that allegedly false testimony was not the basis upon which the indictment was returned. The indictment was returned on the basis that Plaintiff was acting as a lookout for someone selling drugs from an apartment. *See* FAC, ¶ 46. Plaintiff does not allege that the basis for this testimony – that he had yelled out that police were present – was a fabricated statement.

Plaintiff's threadbare assertion that "Andrews and Rodriguez resorted to outright lies in their efforts to sustain [the prosecution]" is "precisely the sort of conclusory allegation[] that courts in this Circuit have consistently found insufficient to rebut a presumption of probable cause." *Parker v. Blackerby*, 368 F. Supp. 3d 61, 622–23 (W.D.N.Y. 2019) (collecting cases); *see also Lacey v. Yates Cty.*, 30 F.Supp.3d 213, 224 (W.D.N.Y. 2014) ("District courts have not hesitated to dismiss . . . claims that fail to rebut the presumption of probable cause that arises from a grand jury indictment"). Because Plaintiff fails to allege any facts which could, if proven,

rebut the presumption of probable cause based on his indictment, his malicious prosecution claim must be dismissed. See *Bey v. Fernandez*, 2018 WL 4259865, at *6 (E.D.N.Y. Sept. 5, 2018).

Plaintiff's second cause of action is, therefore, dismissed.

**c. Plaintiff's False Arrest (Count 1) Claim is Dismissed as Time-Barred**

Whether Plaintiff's false arrest claim is cognizable under *Bivens* presents a closer question.

As Plaintiff correctly notes, in *Powell*, Judge Hellerstein found the plaintiff's false arrest claim to fit "squarely within the context faced in *Bivens* and as such [did] not present a 'new context.'" 2020 WL 5126392, at *6. In that case, plaintiff alleged that he was unconstitutionally arrested in his New York City home by federal officers after they conducted an extralegal, warrantless search of the building's third floor in violation of his Fourth Amendment rights. *Id.* The *Powell* court found that the similarity between plaintiff's claim and the facts in *Bivens* – in which the Court held that the petitioner had a right of action against federal officers who had conducted a warrantless search and then arrested him in his home in violation of the Fourth amendment – was "readily apparent." *Id.*

Plaintiff's false arrest claim in the instant case certainly has parallels to the claims in *Bivens* and *Powell.* Indeed, he pleads his claim as both an "unlawful seizure" and a "false arrest." The only significant difference between *Bivens* and *Powell,* on the one hand, and this case, on the other, is that Druskovich alleges that he was first arrested without probable cause and only then was illegally searched – which illegal search (illegal because it was not incident to a lawful

arrest) yielded the evidence that led to his prosecution.[6] In *Bivens* and *Powell*, it was the other way around – the illegal search preceded the Plaintiff's arrest.

Whether that is a difference that makes a difference for purposes of analyzing whether a *Bivens* claim exists presents an interesting and tricky question. However, the Court need not wrestle with it, because Plaintiff's false arrest claim is time-barred.[7]

"The statute of limitations for *Bivens* actions arising in New York is three years." *Tapia-Ortiz v. Doe*, 171 F.3d 150, 151 (2d Cir. 1999); *Butler v. Hesch*, 286 F. Supp. 3d 337, 352 (N.D.N.Y. 2018). *See also Wallace v. Kato*, 549 U.S. 384, 387-88 (2007) (while the statute of limitations in Section 1983 cases is derived from the analogous state law, the accrual date is a question of federal law); *Chin v. Bowen*, 833 F.2d 21, 23-24 (2d Cir. 1987) (applying the same statute of limitations to Section 1983 and *Bivens* claims). The statute of limitations for a false arrest claim begins to run "when the alleged false imprisonment ends," *i.e.*, when "the victim becomes held pursuant to [legal] process--when, for example, he is bound over by a magistrate

[6]Although the Court need not reach the merits of Plaintiff's false arrest claim, the Federal Defendants' assertion that there was probable cause for Plaintiff's arrest rests on logic that is so embarrassingly flawed as to warrant comment. According to the Federal Defendants, the recovery of narcotics from Plaintiff's jacket pursuant to a search incident to his arrest "provided ample probable cause to arrest Plaintiff." Dkt. No. 61, at 30. That argument is untenable. The United States Attorney's Office for this district should not need this Court to instruct it that evidence recovered in a search conducted AFTER an arrest takes place cannot retroactively furnish probable cause to justify that arrest. *See Walker v. Carrozzo*, 664 F. Supp. 3d 490, 522 (S.D.N.Y. 2023) ("[C]ontraband found pursuant to a search incident to arrest cannot establish probable cause for that same arrest"). In this case, accepting (as I must) Plaintiff's factual allegations as true on a motion to dismiss, a trier of fact could conclude that Plaintiff was arrested without probable cause – a conclusion that is hardly undermined by the Government's decision to abandon Druskovich's prosecution because no officer would testify that he saw any indicia of drug activity prior to arresting the Plaintiff. I assume that the lawyers in the Civil Division of the United States Attorneys' Office know that standing on a staircase – which is all that Plaintiff alleges he was doing – does not, without more, give rise to probable cause. What Druskovich concluded about what the officers might have believed (as a result of his reading the criminal complaint) is not evidence about what actually occurred in connection with the arrest. All Plaintiff alleges, and so all I can presume to be true for purposes of this motion, is that he was coming down the stairs when the officers stopped him for no reason.

[7] Only the City moved to dismiss on statute of limitations grounds; the Federal Defendants did not bother to raise the issue. However, it has been briefed by Plaintiff and is equally applicable to the *Monell* claim against the City and the *Bivens* claims against the Federal Defendants. I can, therefore, rely on this ground in deciding the motion to dismiss.

or arraigned on charges." *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace*, 549 U.S. at 388–89).

Plaintiff concedes that his false arrest claim accrued on February 1, 2022, the date on which he was detained on consent after being arrested and appearing before the Magistrate Judge. *See* Dkt. No. 64, at 15; *USA v. Druskovich*, 22-cr-309, Dkt. No. 11. *See Butler v. Hesch,* 286 F. Supp. 3d 337, 355 (N.D.N.Y. 2018) (false arrest claim accrued on day plaintiff made initial appearance before magistrate judge and was detained after waiving rights to detention hearing); *Dancy v. McGinley*, 843 F.3d 93, 111 (2d Cir. 2016) (cause of action for false arrest accrues at the time of detention).

The statute of limitations thus expired three years later, on February 1, 2025.

Plaintiff's complaint was filed on January 21, 2025 – eleven days before the expiration date. *See* Dkt. No. 1. But while "the filing of a complaint tolls a statute of limitations, the failure to complete service within 90 days, as required by Federal Rule of Civil Procedure 4(m), ends the tolling period and recommences the running of the statute of limitations." *Ojeda v. Mendez*, 2021 WL 7906547, at *7 (E.D.N.Y. Dec. 9, 2021), *report and recommendation adopted*, 2022 WL 4662248 (E.D.N.Y. Sept. 30, 2022), *aff'd*, 2024 WL 177706 (2d Cir. Jan. 17, 2024). Because no defendant was served within 90 days and the Plaintiff failed to timely obtain any extension of the statutory period for service, the statute of limitations resumed running on April 21, 2025 – 90 days after Plaintiff filed his complaint – and expired eleven days later, on May 2, 2025. As of May 2, however, Plaintiff still had not effected service on any defendant in this action.[8] Plaintiff's *Bivens* claim for false arrest must thus be dismissed as time-barred.

[8] As far as the Court can discern from the docket sheet, the earliest service was effected on AUSAs Andrews and Bhaskaran on May 29, 2025. *See* Dkt. No. 31, at ¶ 10.

Plaintiff's only response to this ignores the impact of his failure to serve process within the required 90 days (or to timely obtain an extension of time from the Court). He simply says: we filed less than three years after the date on which I was falsely arrested. That is true, but irrelevant. The failure to comply with Rule 4(m) ended the toll of the limitations period that began on the day the complaint was filed, and the limitations period ran out a couple of weeks later. End of story.

* * *

For the reasons set forth above, Plaintiff's *Bivens* claims for evidence fabrication, malicious prosecution, and false arrest are dismissed.[9] Because amendment would be futile, dismissal is with prejudice and without leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

## IV. PLAINTIFF'S *MONELL* CLAIM AGAINST THE CITY (COUNT 5) IS DISMISSED WITH PREJUDICE

Plaintiff's fifth cause of action asserts a claim against the City under 42 U.S.C. § 1983 "for conduct of police officers relating to withholding exculpatory evidence, fabrication of evidence, and initiating the prosecution without probable cause." FAC, at 19.

"[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

---

[9] Because Defendants are otherwise entitled to dismissal of Plaintiff's *Bivens* claims for malicious prosecution and false arrest, it is unnecessary to address the Federal Defendants' claim that they are entitled to qualified immunity. However, the Court strongly recommends that the United States Attorney's Office: Civil Division carefully review this Court's Individual Practices and Procedures, which explains how to make a qualified immunity motion.

Critically, Section 1983 allows local governments to be held liable for the action of its employees only when those employees are acting "under color of [a state] statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983; *Spinale v. U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 119 (S.D.N.Y.), *aff'd sub nom. Spinale v. U.S. Dep't of Agr.*, 356 F. App'x 465 (2d Cir. 2009) (Section 1983 only provides a cause of action for the deprivation of constitutional rights committed by a person acting under the color of state law). Here, it is undisputed that the officers were acting in a federal capacity as federal task force agents, and were thus acting pursuant to federal, not state, law. *Escobar v. Correa*, 2024 WL 4042122, at *7 (S.D.N.Y. Sept. 4, 2024). Accordingly, the City cannot be held liable for their actions under *Monell*. *See Pou v. U.S. Drug Enf't Admin.*, 923 F. Supp. 573, 579 (S.D.N.Y. 1996), *aff'd sub nom. Pou v. Loszynski*, 107 F.3d 3 (2d Cir. 1997).

The only individual defendant who might have been acting under the color of state law is Detective Mikowski who, as discussed above, was never served with the complaint. *See supra* Section I. Even if Mikowski had been served, Plaintiff has not alleged that Mikowski was personally involved in the underlying constitutional violations. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (to adequately plead an underlying constitutional violation, a plaintiff must allege that an individual was personally involved in the constitutional deprivation). Plaintiff does not allege that Mikowski was present at the time of the arrest or that he was in any way involved in the decision to initiate the prosecution. Plaintiff alleges only that Mikowski was present at the November 1, 2022 interviews with AUSA Andrews and TFOs Veit and Gauvin. *See* FAC, ¶¶ 52–57. That allegation does not give rise to any constitutional claim, whether for false arrest, malicious prosecution, or evidence fabrication.

Because no amendment could cure the identified deficiencies, Plaintiff's *Monell* claim is dismissed with prejudice.

## V. PLAINTIFF'S FAILURE TO INTERVENE CLAIM (COUNT 4) IS DISMISSED WITHOUT PREJUDICE

Plaintiff's fourth cause of action alleges failure to intervene against the Federal Defendants.[10]

It is not clear against whom the failure to intervene claim is alleged. However, to the extent the complaint alleges failure to intervene in violation of 42 U.S.C. § 1983, that claim must fail because Section 1983 requires that a defendant acted under the authority of state – not federal – law, and it is undisputed that TFOs Gauvin, Rodriguez, Boyland, and Veit were acting as federal task force officers under the color of federal law. *See Walsh v. DeJoy*, 2021 WL 4355366, at *5 (S.D.N.Y. Sept. 24, 2021).

To the extent that the complaint alleges failure to intervene in violation of New York City Administrative Code §§ 8-802–8-803, the Court, having dismissed all of the federal claim in suit, declines to exercise supplemental jurisdiction over Plaintiff's claim under the New York City Administrative Code. *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013); *Lopez v. New York City Dep't of Educ.*, 2019 WL 2647994, at *5 (S.D.N.Y. June 26, 2019).

Plaintiff's fourth cause of action is, therefore, dismissed without prejudice.

**Conclusion**

For the foregoing reasons, Plaintiff's First Amended Complaint is dismissed in its entirety. The motions to dismiss are GRANTED.

---

[10] Plaintiff also asserts a failure to intervene claim as against AUSAs Andrews and Bhaskaran, who are entitled to absolute immunity, and as against Detective Mikowski, but as discussed above, he has not been served and is thus not a proper party to this action. *See supra* Sections I, II.

The Clerk of Court is respectfully directed to remove Docket Numbers 58 and 60 from the Court's list of open motions and to close the case.

This constitutes the decision and order of the Court. It is a written decision.

Dated: August 28, 2026

Colleen McMahon

U.S.D.J. 8/28/2026